IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JOSE NATIVIDAD PENA, | ) | |
| MARIA G. REYES, | ) | |
| CONCEPCION PENA, | ) | |
| | ) | |
| Plaintiffs, | ) | No. 14 C 4214 |
| | ) | |
| v. | ) | Magistrate Judge Jeffrey Cole |
| | ) | |
| VILLAGE OF MAYWOOD, | ) | |
| a municipal corporation, | ) | |
| OFFICE REILLY, Star #305, | ) | |
| Village of Maywood Police Officer, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

The plaintiffs have filed a motion for reconsideration of the denial of their motion for summary judgment. Basically, the plaintiffs take umbrage with the denial on two fronts. First, they argue that their motion had to have been granted because the defendants' motion was denied. Second, they complain that the court raised issues that the defendants did not bring up. Neither position is well-taken, and their motion is denied.

The plaintiffs begin their assault on the interlocutory Order of March 15, 2016, by relying on a line of cases stemming from *Bank of Waunakee v. Rochester Cheese Sales, Inc.,* 906 F.2d 1185, 1191 (7th Cir. 1990). There, the court stated that a motion to reconsider is proper when "the Court has patently misunderstood a party, or has made a decision outside the adversarial issues presented to the Court by the parties, or has made an error not of reasoning but of apprehension." 906 F.2d at 1191. Along the way, the court relied on the decision espousing motions for reconsideration in

*Belmont v. Erie Ry.,* 52 Barb. 637, 641 (N.Y.App.Div.1869); 906 F.2d at 1191, and which the plaintiffs' brief quotes and attributes to "Justice Cardozo." [Dkt. #79, at 2]. But, to be sure, this was not *the* "Justice Cardozo" – the illustrious Benjamin Nathan Cardozo, who was born a year after the *Belmont* decision – but his father, Albert, who, in 1874, resigned in disgrace from the New York Supreme Court in the midst of an investigation into allegations of judicial misconduct. *See* Andrew Kaufman, Cardozo, 13–20 (Harv. Univ. Press 1998); https://www.nytimes.com/books/first/k/kaufman-cardozo.html ("If the name Cardozo today means Benjamin Cardozo and if it stands for a distinguished model of judging, in the nineteenth century the name Cardozo meant Albert Cardozo, and it stood for the corrupting effect of politics on law."); Arthur Goodhart, Five Jewish Lawyers of the Common Law, 51–52 (Oxford Univ. Press 1949).

The very case the plaintiffs quote, one of the many flowing from the takeover of the Erie Railway, was a facet of the scandal linking Cardozo *pere* with Tammany Hall's influence over outcomes of cases and appointments of receivers. So, given the judge's motivation, it is perhaps best not to put too much stock in his orders in *Belmont v. Erie Ry.* Still, it cannot be denied that motions for reconsideration have their place, *McWilliams v. McWilliams*, 2006 WL 3332879 (N.D.Ill. 2006); *General Insurance Co. v. Clark Mall*, 2009 WL 2901788 (N.D.Ill. 2009), even when they target interlocutory orders. *See Peirick v. Indiana Univ. Purdue Univ. Indianapolis Athletics Dep't*, 510 F.3d 681, 694 (7th Cir. 2007)("[a] district court [is] entitled to reconsider its initial denial of summary judgment"). But, such motions, as the Seventh Circuit continually reminds us, are rarely proper and are viewed unfavorably. *Bank of Waunakee v. Rochester Cheese Sales, Inc.*, 906 F.2d 1185, 1191 (7th Cir. 1990). And they are better-received if they do not border on the intemperate. *See* Robert Gettleman, *How to Tell a Judge He Screwed Up,* 32 LITIGATION 49, 51 (Summer 2006);

*Censke v. United States*, 314 F.R.D. 609 (N.D.Ill. 2016).[1]

With regard to the plaintiffs' first position, they seem to be operating under their own misapprehension about the nature of a summary judgment proceeding. They submit that, because the court denied the defendants' motion for summary judgment, that meant that the court had to rule that, as a matter of law, the defendants committed an illegal search. [Dkt. # 79, at 2-3]. Not so. In the context of cross-motions for summary judgment, ruling against one party's motion does not necessitate a ruling in favor of the other party's motion. As the Order stated, "[t]he fact that the parties file cross-motions for summary judgment does not necessarily mean that judgment is appropriate for one side or the other." [Dkt. #78, at 2]. *See also R.J. Corman Derailment Servs., LLC v. Int'l Union of Operating Engineers, Local Union 150*, 335 F.3d 643, 647 (7th Cir. 2003); *Santaella v. Metro. Life Ins. Co.*, 123 F.3d 456, 461 (7th Cir. 1997); *Miller v. LeSea Broad., Inc.*, 87 F.3d 224, 230 (7th Cir. 1996). The decision to deny both sides' motions was a decision based on the court's finding that neither side had met their burden of establishing they were entitled to judgment without a trial.

The fact of the matter is, the record the parties put together, the arguments they formulated, and the authority on which they relied all missed the mark under Rule 56. There were too many factual questions left open on both sides to make summary judgment the appropriate means of disposing of this case in either side's favor. The parties failed to demonstrate that those questions – such as exigent circumstances and the reasonableness of Officer Reilly's reaction to the pit bull's attack – are not matters for a jury. In the case of exigent circumstances, for example, "[s]ummary judgment in favor of the defendant is improper unless, viewing the evidence in the light most

---

[1] That is simply common sense and no judge is trying intentionally to err.

favorable to the plaintiffs, it is clear that no reasonable jury could conclude that the plaintiffs' constitutional rights were violated." *Mabe v. San Bernardino Cty., Dep't of Pub. Soc. Servs.*, 237 F.3d 1101, 1108 (9th Cir. 2001). As the Order indicated, the defendants didn't carry their burden here. [Dkt. #72]. But that doesn't mean that, on the other side of the coin, the plaintiffs showed that summary judgment in their favor was proper when the facts were viewed in a light most favorable to the *defendants*.

As the defendants pointed out, Officer Reilly was responding to a call that there were unauthorized persons at a building where he and his partner had experience with various degrees of gang activity, including shootings, aggravated batteries, and the like. Several involved the plaintiff's son, who was a plaintiff in this case until the day the plaintiffs moved for summary judgment. Accordingly, viewing those facts in a light most favorable to the defendants, the court was unprepared to say, as a matter of law, exigent circumstances did not exist. The case the plaintiffs relied upon to support their position that there were not exigent circumstances as a matter of law, *Hawkins v. Mitchell*, 756 F.3d 983, 992 (7th Cir. 2014), had little to do with the fact pattern in this case – again, looking at the facts in the light most favorable to the defendants.

In *Hawkins*, when officers responded to a domestic abuse call, they arrived to discover there had been no physical altercation, the woman was safe outside the residence, and she apologized for having called 9–1-1. 756 F.3d at 992. In our case, there was no such "dissipating" information for the officers to consider. Part of moving for summary judgment, to be sure, is depositing factual statements with the court. But as important a part, if not more so, is fashioning an argument in favor of one's position that is supported with applicable case law. *Compare Massuda v. Panda Express, Inc.*, 759 F.3d 779, 783-84 (7th Cir. 2014); *Price v. Board of Ed. of City of Chicago*, 755 F.3d 605,

4

608 (7th Cir. 2014). The leap from the domestic argument that had ended in *Hawkins* to the building with a troubled and violent history in this case was too much to make.

Moreover, the plaintiffs were also operating under a bit of a misapprehension about the burden of proof in this case. They claimed that the defendants bore a heavy burden to establish they acted pursuant to exigent circumstances, citing *Welsh v. Wisconsin*, 466 U.S. 740 (1984). [Dkt. # 57, at 6]. But *Welsh* was a criminal case. In *Bogan v. City of Chicago*, 644 F.3d 563 (7th Cir. 2011) , the Seventh Circuit discussed, at length, the rationale for the plaintiff in a civil case bearing the burden of proving officers did not act reasonably. 644 F.3d at 568-71. As the court said, quoting *Varlance v. Wisel*, 110 F.3d 1269, 1279 (7th Cir. 1997), "'[e]ven if a presumption of unreasonableness arises from the fact of a warrantless search, that does not serve in a civil case to shift 'the burden of proof in the sense of the risk of nonpersuasion.'" 644 F.3d at 568. Add to that the fact that, in moving for summary judgment, the plaintiffs had to carry this burden while the facts were considered in a light most favorable to the defendants and establish their entitlement to judgment as a matter of law, one might say the heavy burden was actually theirs. And they didn't carry it.

As such, given the shortfalls on both sides, summary judgment was inappropriate for either side, meaning that the matter had to remain a question for the jury. *See, e.g., Bogan*, 644 F.3d at 567, 572-73 (discussing jury's consideration of officer's version of the events and determination of whether exigent circumstances excused officer's warrantless search). If this was not made clear enough in the Order, it should be clear now. But, even prior to the Order, the court made known a number of its misgivings about both parties' presentations in its Order of December 16, 2015. [Dkt. #72]. While briefing was drawing to a close, the parties certainly would have been granted the

5

opportunity to address those misgivings if they liked. They chose not to. Despite the nature of the plaintiffs' motion for reconsideration, the Order denying summary judgment was not the end of the case, but rather signals a trial was necessary.

Also muddying the waters a bit in the summary judgment proceeding was the plaintiffs' argument that Officer Reilly's opening of the door and his wounding the attacking pit bull were inextricably linked. According to the plaintiffs, "as a matter of law, the natural and probable consequence of Defendant Reilly opening the door to the Plaintiffs' residence was that their family pet would aggressively pursue the intruder, and this was an unbroken sequence that led directly to the shooting [of] Spike in the head." [Dkt. #57, at 11]. That was a rather bold statement, and given the record and the minimal development the plaintiffs gave to this proposition, I was not prepared to take such a leap. In fact, the very case the plaintiffs relied upon, *Flint v. City of Milwaukee*, 91 F.Supp.2d 1032 (E.D. Wisconsin 2015) – also involving dogs – held that the matter was inappropriate for summary judgment and should be left for the jury. 91 F.Supp.2d at 1046-49. Beyond that, there were significant differences between the instant case and *Flint* and all the cases the plaintiffs relied on – not only to show what's a "natural" consequence – but what was reasonable in the circumstances. [Dkt. # 78, at 12-14].

That brings us to plaintiffs' second criticism of the denial of the summary judgment motion: that the court improperly raised certain issues *sua sponte*. But facts regarding the multiple laws the plaintiffs broke regarding their pit bull and the dog's violent history were all in the record and were thought to be of significance by the defendants. The court did not make them up; the plaintiffs even admitted them. [Dkt. #71, ¶¶ 28-36]. As for registration perhaps providing notice of the presence of a dangerous animal, the court did not raise that *sua sponte* either; the *plaintiffs* put it into the case

6

by relying on a raft of decisions – including *Flint*, *supra* – in which the police officers had advance notice of the presence of a potentially dangerous dog, and that notice was a significant factor in those cases' analyses. [Dkt. # 57, at 11; Dkt. # 69, at 11; Dkt. # 78, at 13-14].[2] Was the court simply to ignore the glaringly obvious difference between the fact patterns of the case the plaintiffs relied on and the fact pattern here?

Finally, the denial of plaintiffs' summary judgment motion does not, as plaintiffs put it more than once, set a "literally dangerous precedence [sic]" allowing police officers to summarily execute unregistered pets. [Dkt. #79, at 8, 9]. The Order does no such thing and the plaintiffs' reading of it puts out of view a significant factual component of what occurred, at least according to the record. Additionally, a district court Opinion or Order has limited utility; it is not a *precedent* at all, as the

---

[2] The plaintiffs are rather tenacious in arguing that a court must stick to the facts and issues raised by the parties in a summary judgment proceeding. Indeed, they go so far as to state that the court may not so much as utter *dicta* in the course of rendering an opinion. [Dkt. # 79, at 6]. In a brief footnote in the original Opinion, the court noted that the call to the Maywood police was a complaint about "squatters" – that's how the plaintiffs, not the defendants, characterized it [Dkt. #57, at 2, 7] – and if plaintiffs were "squatters", their fourth amendment rights would be curtailed. As described, the building certainly seemed to have more than its share of problems and was not exactly a secure property. Of course, the use of terms like "residing" or "living" [Dkt. # 57, at 1; Dkt. # 79, at 2-3 n.1] would not dispose of the issue if it became one. That was the point.

No legal mandate bars *dicta* and plaintiffs certainly do not point to one – although pure *dicta* is not encouraged. But as Judge Posner reminds us, it is often difficult to determine what is and what is not *dicta*. *See United States v. Crowley,* 837 F.2d 291 (7th Cir. 1988). *See also Quinn v. Robinson*, 783 F.2d 776 (9th Cir. 1986). *See generally* Pierre N. Laval, *Judging Under the Constitution: Dicta About Dicta*, 81 N.Y.U.L.Rev. 1249 (2006).

Often, in orders leading up to trials, such musings are helpful in alerting the parties to matters they may have overlooked but a jury may not and may wonder about. Moreover, the court is free to raise whatever issues and grounds it deems appropriate in such a proceeding, as long as it gives notice to the parties and allows them time to respond. It can *grant* – let alone deny – summary judgment based on such matters under Fed.R.Civ.P. 56(f)(2). *Santiago v. Anderson*, 496 F. App'x 630, 637 (7th Cir. 2012); *King v. Schieferdecker*, 498 Fed. App'x 576, 580 (7th Cir. 2012). While the order of December 16, 2015, was not an official Rule 56(f) notice, it was hoped it would serve a similar purpose – orders much like it have done so in other cases – but in the end it was too subtle to do the trick in this instance.

7

Seventh Circuit has held. *Van Straaten v. Shell Oil Products Co. LLC*, 678 F.3d 486, 490 (7th Cir. 2012)("... decisions of district courts are not authoritative even within the rendering district. They cannot "settle" any proposition."). The Order denying summary judgment is not even binding law of the case. *Dictograph Prods. Co. v. Sonotone Corp.*, 230 F.2d 131, 135 (2nd Cir.1956) (L.Hand, J.); *Curran v. Kwon*, 153 F.3d 481, 487 (7th Cir. 1998). Beyond that, "[j]udges expect their pronunciamentos to be read in context, . . . ." *Wisehart v. Davis*, 408 F.3d 321, 326 (7th Cir. 2005). All the ruling states is that the plaintiffs have not met their burden to establish their entitlement to summary judgment on the question of whether Officer Reilly acted unreasonably in wounding the animal that attacked him. In the plaintiff's view, the officer under the circumstances known to him, had a conscious and deliberate choice: he could allow himself to be bitten or killed by the (vicious) dog thereby perhaps avoiding a component of the plaintiff's suit for emotional harm or defend himself and face suit which would include damages for injury to the pet and the plaintiff's psyche. But things, for summary judgment purposes, are not as cut and dry or simple as the plaintiff's motion portray the events. The ultimate resolution of the case will be for the jury. And the impact of even that judgment will be limited to the parties and the specific and unique circumstances at hand.

It bears repeating, it was the *plaintiffs* who injected the issue of notice of the presence of a dangerous animal into this case by relying on cases in which that was a significant part of the calculus of reasonableness. A court is certainly allowed, if not obligated, to address that and comment on the potential consequences of the plaintiffs' complete disregard of multiple laws. In discussing the laws the plaintiffs admitted breaking, the court focused on the issue of the plaintiff's right to even possess the animal under such circumstances, and unfortunately consigned a likely

more significant question – damages in light of plaintiffs' flouting of four separate laws – to a footnote. [Dkt. #78, at 15 n.3]. The question was put better in the Order of December 16, 2015. [Dkt. #72, at 2].

But, in addition to that, it is noted that the plaintiffs focus on damages for the shooting of their pit bull [Dkt. #57, at 10, 11; #79, at 4] and talk about those damages in terms of their emotional distress as a result. [Dkt. #37, ¶¶ 18, 20; #55-3, at 10 (Dep. Pg. 35)]. Combining the plaintiff's failure to license, register, or neuter their pit bull, and the fact that they kept him in violation of the park proximity law, their view on damages might be far more expansive than what would be allowable under the law. *See, e.g., Anzalone v. Kragness*, 356 Ill.App.3d 365, 370-71, 826 N.E.2d 472, 477-78 (1st Dist. 2005)(in wrongful death of a pet, "notwithstanding an acknowledgment of the loss of companionship as an element of damages, recovery in the death of a pet is geared toward compensation for the loss of personal property and, consequently, the emotional increment in that loss, while recognized, has been severely restricted.").

Also, the failure to register the dog may well impact the question of damages. *Compare Udemba v. Nicoli*, 227 F.3d 8, 15 (1st Cir. 2001); *Montoya v. Shelson,* 2012 WL 4950730, 7 (D.N.M. 2012). While damages as a subject might be premature, it can be said that, at bottom, the plaintiff's "dangerous precedence [sic]" stance is unpersuasive.[3] If it were true, would a ruling in plaintiffs'

---

[3] Indeed, the plaintiffs make the extraordinary comparison between their unlicensed, unregistered, un-neutered pit bull – all in violation of the law – which they keep in proximity to a park – also in violation of the law – which has bitten a person and, while on a walk, killed another dog, and then attacked a police officer, to a car parked on a street without a city sticker. [Dkt. #79, at 4]. There are revenue producing ordinances and ordinances with public safety in mind. Public safety is clearly the reasoning behind most of the laws the plaintiffs ignored here. But, perhaps if the plaintiffs' fictional vehicle had no sticker, no license plates, no headlights, and was driven well over the speed limit straight at a police officer, the comparison might be slightly more apt.

favor mean that all police officers would be forced to passively submit to attacks by vicious animals without protecting themselves? Plaintiffs can't possibly be espousing that, but that seems to be the flipside of their position. *See* Posner, Cardozo: A Study in Reputation, 118 (1990)("'[t]he soundness of a conclusion may not infrequently be tested by its consequences . . . '").[4]

One final point. It is important to note that the plaintiffs, in the course of discussing the law and in the course of attempting to place responsibility for their undisputed violations onto the court's handling of their Rule 56 motion, ignore half of the laws they broke and the vicious history of their animal. If they are truly concerned about the fictional "dangerous precedence [sic]" they think the Order constitutes, it should assuage them that, even if that fiction were fact, the supposed "precedent" would not apply to all pet owners with "unlicensed or unregistered pet[s]" as plaintiffs have contended. [Dkt. #79, at 8]. Rather, it would be limited to situations where the pet had bitten at least one person and had killed another dog and, despite that, the pet owners still disregarded not only licensing *and* registration laws, but neutering laws and proximity laws and a dwelling in a building with the history that the one in this case has and was known to the police. Those are the actual facts in this case, as opposed to the "facts" that the plaintiffs are positing in their motion for reconsideration. All of this and more will be for a jury to consider and unravel.

---

[4] Given the confusion mentioned earlier, it should be emphasized that Judge Posner's highly laudatory book is about Benjamin Nathan Cardozo, not his father.

## CONCLUSION

The plaintiffs' motion for reconsideration [Dkt. #79] is DENIED.

ENTERED: /s/ Jeffrey Cole
UNITED STATES MAGISTRATE JUDGE

**DATE:** 8/29/16